1                    IN THE UNITED STATES DISTRICT COURT

2                   FOR THE SOUTHERN DISTRICT OF TEXAS

3                             MCALLEN DIVISION

4    UNITED STATES OF AMERICA        §      CASE NO. 7:21-CR-02138
                                     §      MCALLEN, TEXAS
5    VERSUS                          §      WEDNESDAY,
                                     §      NOVEMBER 10, 2021
6    OMAR X. ROMERO                  §      3:39 P.M. TO 4:26 P.M.

7                            **RE-ARRAIGNMENT**

8              BEFORE THE HONORABLE RICARDO H. HINOJOSA
                     UNITED STATES MAGISTRATE JUDGE

9

10

11   APPEARANCES:                           SEE NEXT PAGE

12   ELECTRONIC RECORDING OFFICER:     ANTONIO T. TIJERINA

13   CASE MANAGER:                     NELIDA LOSOVA

14

15

16

17

18

19

20                    TRANSCRIPTION SERVICE BY:

21             JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                      935 Eldridge Road, #144
22                    Sugar Land, TX 77478
                          281-277-5325
23              mary@judicialtranscribers.com

24
        Proceedings recorded by electronic sound recording;
25         transcript produced by transcription service.

1                              APPEARANCES:

2

3   FOR THE GOVERNMENT:              ROBERTO LOPEZ, JR., ESQUIRE
                                     U.S. Attorney's Office
4                                    1701 W. Highway 83
                                     Suite 600
5                                    McAllen, TX 78501
                                     956-618-8010
6                                    Roberto.Lopez2@usdoj.gov

7

8   FOR THE DEFENDANT:              THOMAS J. MCHUGH, ESQUIRE
                                     THE LAW OFFICES OF
9                                    THOMAS J. MCHUGH, PLLC
                                     6243 I-10 West #503
10                                   San Antonio, TX 78201
                                     (210) 827-8037
11                                   thomasjmchughlaw@gmail.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                                    INDEX

2                                                              PAGE:

3    PROCEEDINGS COMMENCED                              4

4    SUMMARY OF CRIMINAL INFORMATION                    6

5    WAIVER OF INDICTMENT                              13

6    DETERMINATION OF COMPETENCY TO PLEAD              15

7    RE-ARRAIGNMENT                                    16

8    EXPLANATION OF RIGHTS                             18

9    WAIVER OF RIGHTS                                  21

10   COURT FINDINGS                                    24

11   EXPLANATION OF SENTENCING GUIDELINES              24

12   COURT FINDINGS                                    25

13   SUMMARY OF PLEA AGREEMENT                         26

14   FINDING OF VOLUNTARINESS TO PLEAD                 33

15   FACTUAL BASIS FOR PLEA - COUNT 1                  34

16   FACTUAL BASIS FOR PLEA - COUNT 2                  44

17   COURT FINDINGS AND ACCEPTANCE OF PLEA             47

18   UPCOMING DEADLINES                                47

19   COLLOQUY REGARDING BOND                           48

20

21

22

23

24

25

1    **MCALLEN, TEXAS; WEDNESDAY, NOVEMBER 10, 2021; 3:39 P.M.**

2        THE COURT:  Criminal Number M-21-2138, *United*

3 *States of America v. Omar X. Romero.*

4        MR. LOPEZ:  Government's present and ready, Your

5 Honor.  Bobby Lopez on behalf of the Government.

6        MR. MCHUGH:  Good afternoon, Your Honor.  Tom

7 McHugh representing the Defendant.  He is present.  We are

8 ready to proceed.  Good afternoon.

9        THE COURT:  And he speaks and understands English?

10        MR. MCHUGH:  He does, Your Honor.

11        THE COURT:  And it is a waiver of indictment, and

12 a change of plea?

13        MR. MCHUGH:  That is correct, Your Honor.

14        THE COURT:  For a plea.  I --

15        MR. MCHUGH:  A plea.

16        THE COURT:  -- got another change of plea.  The

17 Government's ready to proceed in this way?

18        MR. LOPEZ:  Yes, Your Honor.

19        THE COURT:  Mr. Romero, if you don't mind raising

20 your right hand, so you can be sworn in.

21         OMAR X. ROMERO, DEFENDANT, SWORN

22        THE COURT:  Mr. Romero, do you understand that,

23 having been sworn, all your answers to my questions have to

24 be the truth; and if they are not, you are subjecting

25 yourself to the penalties of perjury and/or of making a

1  false statement, sir?

2          DEFENDANT ROMERO:  I do, Your Honor.

3          THE COURT:  What is your full true and correct

4  name, sir?

5          DEFENDANT ROMERO:  Omar Xavier Romero.

6          THE COURT:  And Mr. Romero, how old are you now?

7          DEFENDANT ROMERO:  Thirty-eight years old.

8          THE COURT:  How far have you gone in school, sir?

9          DEFENDANT ROMERO:  Up to a junior in college.

10          THE COURT:  And so you obviously read and write

11  and speak and understand English?

12          DEFENDANT ROMERO:  Yes, Your Honor.

13          THE COURT:  Have you ever been treated by a doctor

14  or admitted to a hospital for a mental disease or mental

15  disorder of any kind?

16          DEFENDANT ROMERO:  No, Your Honor.

17          THE COURT:  Have you, during the last 24 hours,

18  taken any kind of drugs, medicine, or pills or drunk any

19  alcoholic beverages?

20          DEFENDANT ROMERO:  No, Your Honor.

21          THE COURT:  And --

22          MR. MCHUGH:  Your Honor, excuse me.  That was --

23          THE COURT:  (Speakers talk at the same time) --

24          MR. MCHUGH:  -- a qualified answer because he did

25  take a gummy last night to help him sleep.

1          DEFENDANT ROMERO:  No.

2          THE COURT:  Yeah.  That's --

3          MR. MCHUGH:  That was not last night?

4          DEFENDANT ROMERO:  Two weeks ago.

5          MR. MCHUGH:  Two weeks ago.

6          THE COURT:  I think, by two weeks ago, any affect

7  that, that gummy had is gone.

8          MR. MCHUGH:  I'm not a gummy expert, Judge.

9          THE COURT:  Well, I'm not either, but I just can't

10 imagine that it would last for two weeks, or he wouldn't be

11 standing up as awake as he is.

12         Have you seen a -- it's my understanding that the

13 Government is attempting to file a Criminal Information

14 rather than an indictment in your case, and that you are

15 willing to agree to this.  Have you been furnished with a

16 copy of the attempted Criminal Information charge against

17 you?

18         DEFENDANT ROMERO:  Yes, You Honor.

19         THE COURT:  You do realize that the charges that

20 they're attempting to bring by a Criminal Information are

21 two different ones.

22         The first one is that, on or about January 19 of

23 the year 2018 in the Southern District of Texas, you had

24 knowingly and willfully -- you did knowingly and willfully

25 use and cause to be used a facility in interstate and

1    foreign commerce, namely, a telephone, and wire with the

2    intent to promote, manage, establish, carry on, and

3    facilitate the promotion, management, establishment, and

4    carrying on of an unlawful activity, namely, bribery,

5    contrary to Texas Penal Code § 36.02, and further, performed

6    and attempted to perform an act to promote, manage,

7    establish, and carry on and to facilitate the promotion,

8    management, establishment, and carrying on of an unlaw

9    activity, contrary to -- well, violation of Title 18 and

10   U.S. Code § 1952(a)(3).  You understand that's with regards

11   to Count 1 of the allegation in this proposed Criminal

12   Information; is that correct?

13           DEFENDANT ROMERO:  I do, Your Honor.

14           THE COURT:  Do you also understand that, with

15   regards to Count 2 in the Criminal Information, the

16   allegation is that, on or about June 25th of the year 2020,

17   through August 21st of the year 2020, in the Southern

18   District of Texas, you had knowingly and fraudulently

19   received a material amount of property from a debtor after

20   the filing of a case under Title 11 of the United States

21   Code with the intent to defeat the provisions of Title 11,

22   to wit:

23           Defendant, with the intent to defeat the

24   provisions of Title 11, namely, that you received $50,000

25   from the debtor, Hidalgo County Emergency Services

1   Foundation, and that, that is a violation of Title 18 U.S.

2   Code § 1525.  Do you understand that, that is the allegation

3   and charge in Count Number 2 in the proposed Criminal

4   Information?

5            DEFENDANT ROMERO:  I do, Your Honor.

6            THE COURT:  Do you know what the maximum possible

7   punishment is that the Court can impose on you with regards

8   to these allegations?

9            DEFENDANT ROMERO:  I do, Your Honor.

10           THE COURT:  Do you realize that it can be up to

11  five year -- with regards to each count -- it can be up to

12  five years imprisonment and/or a fine not to exceed up to

13  $250,000?  The Court will also have to impose a $100 special

14  assessment against you as required by law.

15           Also, at the time of sentencing, if the Court

16  incarcerates you, the Court can impose with regards to each

17  count a supervised release term of up to three years which

18  means, when you would be released from prison, you'd be

19  released under supervised release; and if you violate any

20  condition of supervised release, that term will be revoked,

21  and you would serve that time in custody.

22           So as to each count, it can be up to five years

23  imprisonment, and/or a $250,000 fine, and a supervised

24  release term of up to three years, and then, there is a $100

25  special assessment as to each count.  Do you understand

1    that, sir?

2            DEFENDANT ROMERO:  I do, Your Honor.

3            THE COURT:  And you are obviously an American

4    citizen, right?

5            DEFENDANT ROMERO:  Yes, sir, Your Honor.

6            THE COURT:  You also know that in the Criminal

7    Information, the Government is trying to also give Notice of

8    Forfeiture of Property.

9            DEFENDANT ROMERO:  I do, Your Honor.

10           THE COURT:  They would have to give you -- they're

11   attempting to give notice to you that, in the event of

12   conviction, they intend to seek forfeiture of all property,

13   real or personal, constituting or derived from any proceeds

14   that you may have obtained, directly or indirectly, as a

15   result of that violation; and the property subject to

16   forfeiture with regards to Count 1, but is not limited to,

17   the following property is at least $31,875 in U.S. Currency,

18   and the (indiscernible) subject to forfeiture with regards

19   to Count 2 of the Criminal Information, and includes, but is

20   not limited to, the following property:  at least $50,000 in

21   United States currency.  Do you understand that that's also

22   part of the punishment that might be imposed as forfeiture;

23   is that correct?  Do you understand that, sir?

24           DEFENDANT ROMERO:  I do, Your Honor.

25           THE COURT:  Do you also understand, that as a

1  result, if you plead guilty, you would need -- I would need

2  to notify you, that upon conviction, a monetary judgment may

3  be imposed equal to the total value of the property subject

4  to forfeiture, that, that could be part of the judgment

5  also?  Do you understand that?

6        DEFENDANT ROMERO:  I do, Your Honor.

7        THE COURT:  Do you also understand that, in the

8  event the property subject to forfeiture as a result of any

9  act or commission of the Defendant -- of you, cannot be

10  located upon the exercise of due diligence has been

11  transferred or sold to or deposited with a third party or

12  has been placed beyond the jurisdiction of this Court or has

13  been substantially diminished in value or has been comingled

14  with other property that cannot be divided without

15  difficulty, it would be the intent of the United States to

16  seek forfeiture of any other property of yours up to the

17  total value of such property pursuant to the laws of the

18  United States, namely, Title 21 U.S. Code § 853(p)

19  incorporated and referenced by Title 28 U.S. Code § 2461?

20  Do you understand that, sir?

21        DEFENDANT ROMERO:  I do, Your Honor.

22        THE COURT:  You realize that, in the United

23  States, you have a constitutional right to be charged by and

24  indictment of a grand jury, but that you can give up that

25  right, and you can consent to being charged by a criminal

1  information of the U.S. Attorney.  Do you understand that?

2              DEFENDANT ROMERO:  I do, Your Honor.

3              THE COURT:  You also understand that, instead of

4  an indictment, this felony charges against you are being

5  brought by the United States Attorney by the filing of this

6  -- attempted filing of this Criminal Information, or this

7  filing of the Criminal Information.  Do you understand that,

8  sir?

9              DEFENDANT ROMERO:  I do, Your Honor.

10             THE COURT:  Do you also understand that, unless

11 you waive your right to an indictment, you cannot be charged

12 with a felony unless a grand jury finds by a return of an

13 indictment that there is probable cause to believe that you

14 committed the crime, and it has been committed -- it has

15 been committed, and that you were the one who committed it.

16 Do you understand that, that would have to be proven beyond

17 a reasonable doubt also?

18             DEFENDANT ROMERO:  I do, Your Honor.

19             THE COURT:  Do you also understand that, if you do

20 not give up your right to an indictment, the Government can

21 present the case to the grand jury and request that it

22 indict you?  Do you understand that?

23             DEFENDANT ROMERO:  I do, Your Honor.

24             THE COURT:  Do you also understand that a grand

25 jury is composed of at least 16 and not more than 23 people

 1  and at least 12 of those grand jurors would have to find

 2  that there is probable cause to believe that you committed

 3  the crime with which you were being charged with before you

 4  could be indicted?  Do you understand that, sir?

 5           DEFENDANT ROMERO:  I do, Your Honor.

 6           THE COURT:  Do you also understand that the grand

 7  jury might decide to indict you, or they might decide not to

 8  indict you?  Do you understand that, sir?

 9           DEFENDANT ROMERO:  I do, Your Honor.

10           THE COURT:  Do you also understand that, if you

11  gave up your right to an indictment, the grand jury -- an

12  indictment by the grand jury, this case will proceed against

13  you on the U.S. Attorney's Information just as though you

14  had been indicted?  Do you understand that, sir?

15           DEFENDANT ROMERO:  I do, Your Honor.

16           THE COURT:  I'll ask you again if I haven't

17  already asked you.  Have you discussed the matter of waiving

18  your right to an indictment by a grand jury with your

19  attorney?

20           DEFENDANT ROMERO:  I have, Your Honor.

21           THE COURT:  Do you understand your right to an

22  indictment by a grand jury after I have explained it?

23           DEFENDANT ROMERO:  I do, Your Honor.

24           THE COURT:  Do you also understand that, if there

25  has been any threat or promise that has been made to you as

1  -- my question is, have there been threats or promises that

2  have been made to you to make you want to plead guilty and

3  waive up your right an indictment?

4          DEFENDANT ROMERO:  No, Your Honor.

5          THE COURT:  Do you wish to give up your right to

6  an indictment by a grand jury on these charges?

7          DEFENDANT ROMERO:  I do, Your Honor.

8          THE COURT:  Do you see any reason why he should

9  not give up his right to an indictment, U.S.'s defense

10 lawyer?

11         MR. LOPEZ:  I do not, Your Honor.

12         THE COURT:  There is a Waiver of Indictment form

13 that is going to be presented to you.  Go ahead and read it,

14 and it is here in open Court; and if you want to go ahead

15 and proceed to sign it, go ahead and sign it.

16         THE COURT:  You have read it before?

17         DEFENDANT ROMERO:  Yes, Your Honor.

18     (Pause.)

19         THE COURT:  The Court is entering an order and

20 finding that this waiver is knowledgeably and voluntarily

21 made, and it is being accepted.

22         And it's my understanding that he wanted to

23 proceed with regards to a plea?

24         MR. LOPEZ:  Yes, Your Honor.

25         THE COURT:  Today's is the 9th, or what is it?

1  Tenth.  I filled up the 10th on the indictment.  There was a

2  blank for us to fill the date in, in the Waiver of

3  Indictment form.

4          Do you still want to proceed with the change --

5  with the plea; is that correct, sir?

6          DEFENDANT ROMERO:  Yes, Your Honor.

7          THE COURT:  Okay.  You're still under oath.  You

8  understand that, right?

9          DEFENDANT ROMERO:  Yes, Your Honor.

10         THE COURT:  And before I accept your guilty plea,

11 there are some questions that I have ask you in order for me

12 to be satisfied that this is a valid guilty plea.  If you

13 did not understand any of my -- any of my questions or

14 didn't hear any of my questions, please, let me know that

15 you didn't understand, or you didn't hear them because it is

16 very important, that in order for this to be a valid guilty

17 plea, that you understand each question, and that you hear

18 each question before you answer it.  Do you understand that,

19 sir?

20         DEFENDANT ROMERO:  I do, Your Honor.

21         THE COURT:  Do you -- I've already asked you this

22 again, but I'm going to ask -- I've already asked you this,

23 but I'll ask it again.  You do understand that, having been

24 sworn, all your answers to my questions will be subject to

25 the penalties of perjury or making a false statement if you

1    do not answer truthfully.  Do you understand that, sir?

2              DEFENDANT ROMERO:  I do, Your Honor.

3              THE COURT:  I'll ask you again, how old are you,

4    now, sir?

5              DEFENDANT ROMERO:  Thirty-eight.

6              THE COURT:  And again, how far have you gone in

7    school?

8              DEFENDANT ROMERO:  I believe to a junior in

9    college, Your Honor.

10             THE COURT:  And you obviously read and write and

11   speak and understand English?

12             DEFENDANT ROMERO:  I do, Your Honor.

13             THE COURT:  Have you ever been treated by a doctor

14   or admitted to a hospital for a mental disease or mental

15   disorder of any kind?

16             DEFENDANT ROMERO:  No, Your Honor.

17             THE COURT:  Have you, during the last 24 hours,

18   taken any kind of drugs, medicine, or pills or drunk any

19   alcoholic beverages?

20             DEFENDANT ROMERO:  No, Your Honor.

21             THE COURT:  Do you, as his attorney, have any

22   doubt as to his competence to understand these proceedings

23   and to enter a knowing plea at this time?

24             MR. MCHUGH:  I have no doubt, Your Honor.

25             THE COURT:  The Court is going to find the

1    Defendant is competent to understand these proceedings and

2    to enter a knowing plea in this case.

3              Mr. Romero, have you had an opportunity to discuss

4    your case with your lawyer?

5              DEFENDANT ROMERO:  I have, Your Honor.

6              THE COURT:  Are you satisfied with the way he has

7    represented you?

8              DEFENDANT ROMERO:  I am, Your Honor.

9              THE COURT:  Have you received or seen a copy of

10   the Criminal Information that has been filed in this case?

11   I think you told me you have; is that correct?

12             DEFENDANT ROMERO:  Yes, Your Honor.

13             THE COURT:  Is that correct?

14             DEFENDANT ROMERO:  Yes, Your Honor.

15             THE COURT:  Have you had sufficient time to talk

16   to your attorney about the charges contained in the Criminal

17   Information?

18             DEFENDANT ROMERO:  Yes, Your Honor.

19             THE COURT:  The Court's going to find that he's

20   taken full advantage of his right to an attorney, so you can

21   go ahead and proceed to re-arraigning him on the Criminal --

22   to arraign him on the Criminal Information and re-arraign

23   him.

24             MR. LOPEZ:  Thank you, Your Honor.

25             The United States District Court, Southern

1 District of Texas, McAllen Division, *United State of America*

2 *v. Omar X. Romero*, Criminal Number M-21-2138, Criminal

3 Information.

4          The acting United States Attorney charges in Count

5 1, on or about January 19, 2018, in the Southern District of

6 Texas, the Defendant knowingly and willfully did use and

7 cause to be used a facility in interstate and foreign

8 commerce, namely, a telephone wire with the intent to

9 promote, manage, establish, carry on, and facilitate the

10 promotion, management, establishment, and carrying on of an

11 unlawful activity, namely, bribery, contrary to Texas Penal

12 Code § 36.02, and thereafter, performed and attempted to

13 perform an act to promote, manage, establish, and carry on

14 and to facilitate the promotion, management, establishment,

15 and carrying on of the above unlawful activity in violation

16 of Title 18 United States Code § 1952(a)(3).

17          In Count 2, on or about June 25, 2020, through

18 August 21, 2020, in the Southern District of Texas, the

19 Defendant, Omar X. Romero, knowingly and fraudulently

20 received a material amount of property from a debtor after

21 the filing of a case under Title 11 of the United States

22 Code with the intent to defeat the provisions of Title 11,

23 to wit:

24          Defendant received approximately $50,000 from the

25 debtor, Hidalgo County Emergency Services Foundation, in

1    violation of Title 18 United States Code § 152, subsection

2    5.

3              Mr. Romero, to the charges contained in Count 1 of

4    the Criminal Information, how do you plead, guilty or not

5    guilty?

6              DEFENDANT ROMERO:  Guilty.

7              MR. LOPEZ:  To the charges contained in Count 2 of

8    the Criminal Information, how do you plead, guilty or not

9    guilty?

10             DEFENDANT ROMERO:  Guilty.

11             THE COURT:  Mr. Romero, you do understand that,

12   under the constitutional laws of the United States, you can,

13   if you want to, plead not guilty; and if you plead not

14   guilty, then, you have a trial by a jury or a judge on the

15   charges contained in the Criminal Information against you.

16   Do you understand that, sir?

17             DEFENDANT ROMERO:  I do, Your Honor.

18             THE COURT:  Do you also understand that, at a

19   trial, you would have the right to the assistance of a

20   lawyer whether you could afford one or not; and if you could

21   not afford one, the Court would appoint one to represent you

22   at all stages of the proceedings against you at no cost to

23   you?  Do you understand that, sir?

24             DEFENDANT ROMERO:  I do, Your Honor.

25             THE COURT:  Do you also understand that, at a

1  trial, you would be presumed to be innocent, and the

2  Government would have to overcome that presumption and prove

3  you're guilty by competent evidence and beyond a reasonable

4  doubt, and it would not be up to you to prove your

5  innocence?  Do you understand that, sir?

6           DEFENDANT ROMERO:  I do, Your Honor.

7           THE COURT:  Do you also understand, in the course

8  of a trial, the witnesses for the Government have to come

9  into the courtroom and testify in your presence and in the

10  presence of your attorney, and your attorney could cross-

11  examine the witnesses for the Government, object to any

12  evidence offered by the Government, and present any evidence

13  on your behalf that you might want to present?  Do you

14  understand that, sir?

15           DEFENDANT ROMERO:  I do, Your Honor.

16           THE COURT:  Do you also understand that, at a

17  trial, while you would have the right to take the witness

18  stand and testify if you chose to do so, you would also have

19  your very important right, under the United States

20  Constitution Fifth Amendment, not to be compelled to

21  incriminate yourself and not to testify, and no one could

22  hold it against you if you did not testify?  Do you

23  understand that, sir?

24           DEFENDANT ROMERO:  I do, Your Honor.

25           THE COURT:  Do you also understand that, if you

1   continue to plead guilty, and if I accept this guilty plea,

2   that you're giving up, and you're waiving up your right to a

3   trial, including the right to have a jury determine whether

4   you are guilty or not guilty, as well as having a jury

5   determine any sentencing factor in your case, and you also

6   give up all the other rights that I have just mentioned and

7   discussed with you that you give up when you plead guilty;

8   and in your case, there would not be a trial, and I would

9   simply enter a judgment of guilty and sentence you on the

10  basis of your guilty plea?  Do you understand that, sir?

11          DEFENDANT ROMERO:  I do, Your Honor.

12          THE COURT:  Do you also understand that, if you

13  plead guilty, you give up your right not to incriminate

14  yourself and not to testify against yourself; because in

15  order for me to be satisfied that you are guilty, I am going

16  to have to ask you some questions about what you did in

17  order to satisfy myself that you are guilty as charged as

18  you -- and as you will be saying, and as you have said --

19  that you are with regards to the charges contained in the

20  Criminal Information?  Do you understand that, sir?

21          DEFENDANT ROMERO:  I do, Your Honor.

22          THE COURT:  Are you willing to waive up and give

23  up your right to a trial and these other rights which I have

24  just mentioned and discussed with you that you give up when

25  you plead guilty?

1            DEFENDANT ROMERO:  I am, Your Honor.

2            THE COURT:  You've told me already that you've

3    discussed with your attorney the charges contained in the

4    Criminal Information against you; is that correct?

5            DEFENDANT ROMERO:  Yes, Your Honor.

6            THE COURT:  Do you understand what you're being

7    charged with?

8            DEFENDANT ROMERO:  I do, Your Honor.

9            THE COURT:  I've already told you once, but I'll

10   tell you again.  Do you understand that, in order to find

11   you guilty of Count Number 1 of the Indictment, the

12   Government would have to prove the Criminal Information -- I

13   mean, the Government would have to prove at a trial by

14   competent evidence and beyond a reasonable doubt that, on or

15   about January 19th of the year 2018, in the Southern

16   District of Texas, you had knowingly and willfully did --

17   you knowingly and willfully did use and cause to be used a

18   facility in interstate and foreign commerce, namely,

19   telephone and a wire with the intent to -- and/or a wire

20   with -- it is and/or a wire, right?

21            MR. LOPEZ:  Yes, Your Honor.

22            THE COURT:  -- with the intent to promote, manage,

23   establish, carry on, and facilitate the promotion,

24   management, establishment, and carrying on of an unlawful

25   activity, namely, bribery, contrary to Texas Penal Code §

22

1  36.02, and thereafter, performed and attempted to perform an

2  act to promote, manage, establish, and carry on and to

3  facilitate the promotion, management, establishment, and

4  carrying on of the said unlawful activity.  Do you

5  understand that that's what they would have to prove beyond

6  a reasonable doubt in order for you to be found guilty of

7  Count Number 1?

8          DEFENDANT ROMERO:  I do, Your Honor.

9          THE COURT:  And do you understand that, in order

10 to find guilty of -- find you guilty with regards to Count

11 Number 2, the Government would have prove at a trial by

12 competent evidence and beyond a reasonable doubt that, on or

13 about June 25th of the year 2020, through August 21st of the

14 year 2020, that you had knowingly and fraudulently received

15 a material amount of property from a debtor after the filing

16 of a case under Title 11 of the United States Code with the

17 intent to defeat the provisions of Title 11, to wit:

18          Namely, you had received $50,000 from the debtor,

19 Hidalgo County Emergency Services Foundation, and that, that

20 would be a violation of Title 18 U.S. Code § 152(5).  Do you

21 understand that, they would have to prove beyond a

22 reasonable doubt that with regards to Count 2 of your

23 Criminal Information?

24          DEFENDANT ROMERO:  I do, Your Honor.

25          THE COURT:  And you do realize that I've indicated

1    to you what the punishment can be with regards to this

2    charges, right?

3              DEFENDANT ROMERO:  Yes, Your Honor.

4              THE COURT:  I have told you that it can be up to

5    five years imprisonment and/or a $250,000 with regards to

6    each one of the charges in the Criminal Information.  And

7    also, it can be up to five years imprisonment and/or a fine

8    not to exceed $250,000.  The Court also has to impose a $100

9    special assessment against you as required by law.

10             Also, if the Court finds that there is a victim in

11   this violation of the law, the Court can order restitution

12   with regards to that.

13             And also, if the Court incarcerates you, the Court

14   can impose a supervised release term of up to three years

15   with regards to each one of the counts in the Criminal

16   Information; and if you violate any condition of supervised

17   release, that term could be revoked, and you would serve

18   that time in custody.

19             In addition to all this, if the Court were to find

20   that you are financially able, the Court, at the time of the

21   sentencing, would have to assess the cost of incarceration

22   and supervised release supervision on you; or if you were

23   placed on probation, the cost of probation supervision on

24   you.  Do you understand all that, sir?

25             DEFENDANT ROMERO:  I do, Your Honor.

1          THE COURT:  Do you need any further explanation as

2    to what the maximum possible punishment is in your case with

3    regards to each one of these counts?

4          DEFENDANT ROMERO:  No, Your Honor.

5          THE COURT:  The Court is going to find that the

6    Defendant understands the nature of the charges to which his

7    plea offered and certainly aware what the maximum possible

8    punishment is.  Have you and your attorney talked about the

9    Sentencing Commission Guidelines and what, if any, affect

10   they may have with regards to your sentencing?

11         DEFENDANT ROMERO:  Yes, Your Honor.

12         THE COURT:  Do you understand that I will not be

13   able to determine what guideline sentence might apply in

14   your case until after a presentence report has been

15   completed, and you and the Government have had an

16   opportunity to object to that report?  Do you understand

17   that, sir?

18         DEFENDANT ROMERO:  Yes, Your Honor.

19         THE COURT:  Do you also understand that, even

20   after it's been determined as to what the applicable

21   guideline sentence might be in your case, that I can, if I

22   find it appropriate, sentence you up to the maximum possible

23   punishment as I explained it regardless of what the

24   guideline determination might be, that the Court has that

25   option to make that decision, that it can sentence you up to

1    the maximum possible punishment as I explained it to you

2    regardless of what the guideline determination might be?  Do

3    you understand that?

4              DEFENDANT ROMERO:  I do, Your Honor.

5              THE COURT:  Do you also understand that, in our

6    federal system of the United States, there is no parole; and

7    when you are sent to prison, you will not -- you will be

8    sent -- you will be released on whatever supervised release

9    term the Court might impose at the time of the sentencing,

10   and you would have to serve the entire imprisonment time in

11   custody, and there is no parole?  Do you understand that,

12   sir?

13             DEFENDANT ROMERO:  I do, Your Honor.

14             THE COURT:  The Court is going to find the

15   Defendant is aware of the sentencing guidelines and has had

16   a full discussion with his attorney about it.  In your own

17   case, has anybody threatened you or forced you to plead

18   guilty or told you that, if you did not plead guilty,

19   further charges or some other action will be brought against

20   you?

21             DEFENDANT ROMERO:  No, Your Honor.

22             THE COURT:  Is there a plea agreement as a result

23   of discussions between the Government and the defense in

24   this case?

25             MR. LOPEZ:  Yes, Your Honor, and it reads in

1   pertinent part:

2          The Defendant agrees to plead guilty to Counts 1

3   and 2 of the Criminal Information; and pursuant to Title 18

4   United States Code § 3663(a)(3), the Defendant agrees and

5   stipulates that at least $31,875 in United States currency

6   represents the relevant proceeds that the Defendant

7   obtained, directly or indirectly, as a result of his

8   participation in the violation charged in Count 1 in that,

9   the factual basis for his guilty plea supports the

10  forfeiture of $31,875.  The Defendant agrees to forfeit any

11  of the Defendant's property in substitution up to a total

12  forfeiture of $31,875.  And further, the defendant agrees to

13  be in position of a personal money judgment up to that

14  amount.

15         The Defendant also agrees that, pursuant to Title

16  18 United States Code § 3663(a)(3), the Defendant agrees and

17  stipulates that at least $50,000 in United States currency

18  represents the proceeds the Defendant obtained, directly or

19  indirectly, as a result of his participation in the

20  violation charged in Count 2, and that a factual basis for

21  his guilty plea supports the forfeiture of $50,000.

22         The Defendant agrees to forfeit any of the

23  Defendant's property in substitution up to a total

24  forfeiture of $50,000.  And further, the Defendant agrees to

25  the imposition of a personal money judgment up to that

1    amount.

2            And the Defendant agrees to make a complete

3    financial disclosure by truthfully executing a sworn

4    financial statement within 14 days, and by authorizing the

5    release of all financial information requested by the United

6    States.

7            The Defendant agrees to authorize the release of

8    all financial information requested by the United States and

9    to take all steps necessary to pass clear title to

10   forfeitable assets to the United States and to fully assist

11   in the collection of restitution and fines, including, but

12   not limited to, surrendering title, executing warranty

13   deeds, signing consent decrees, and signing any other

14   documents to effectuate the transfer of any asset.

15           In exchange, the Government will recommend that

16   the offense level decrease by two levels, pursuant to United

17   States Sentencing Guidelines § 3E1.1(a) if the Defendant

18   clearly demonstrates acceptance of responsibility, and that

19   the sentences for Counts 1 and 2 of the Criminal Information

20   run concurrently.

21           THE COURT:  Mr. McHugh, is that the plea agreement

22   for your client?

23           MR. MCHUGH:  That is the plea agreement, Your

24   Honor.  Yet, there is additional understanding if I could --

25   if I could state that for the record.

1           THE COURT:  Well, I don't know what it means when

2   you say, "additional understanding," that's not in the plea

3   agreement, but what -- I guess, I'll listen to what you have

4   to say.

5           MR. MCHUGH:  Well, thank you, Your Honor.

6           In regard to acceptance of responsibility where

7   the Defendant receives the benefit of a two-level reduction

8   under 3E1.1(a) --

9           THE COURT:  And do you have an agreement with the

10  Government that they're going to proceed with the extra

11  point besides that two-level decrease?

12          MR. MCHUGH:  I have had a discussion with the

13  Government for a timely plea, and the Government has

14  indicated that it is not their history to oppose that.

15          THE COURT:  Well, they have to make the motion in

16  order for the extra minus one for -- has to come from the

17  Government in the form of a motion.  I take it, your

18  agreement is that you would proceed to move for that.  Is

19  that --

20          MR. LOPEZ:  Your Honor, I anticipate that we will

21  be moving at that point in time; however, because of

22  guideline calculations, I don't even know if this is going

23  to be something that would be eligible for a third point;

24  but nonetheless, I've explained to Mr. McHugh that, should

25  things continue as they are, I fully anticipate that the

1  Government --

2          THE COURT:  Well, we -- everything pretty much is

3  eligible for the extra point for acceptance of

4  responsibility if the Government proceeds for that --

5          MR. LOPEZ:  That's correct.

6          THE COURT:  -- to move for it.

7          MR. LOPEZ:  That's correct, Your Honor.

8          THE COURT:  You understand that, Mr. McHugh,

9  right?

10          MR. MCHUGH:  I do, Your Honor.

11          THE COURT:  Okay.  So he says he doesn't really

12  have a agreement to do that, but that he doesn't foresee

13  that he will not do that, but there is nothing that is part

14  of an agreement here.

15          MR. MCHUGH:  I understand, Your Honor, and that

16  satisfies the Defendant.

17          THE COURT:  And Mr. Romero, is that satisfactory

18  to you?

19          DEFENDANT ROMERO:  Yes, Your Honor.

20          THE COURT:  What else did you want to say, Mr.

21  McHugh?

22          MR. MCHUGH:  Your Honor, looking at the Criminal

23  Information, the sealed Criminal Information, which has been

24  filed and the Notice of Plea Agreement, there was an initial

25  misunderstanding which has been cleared up where the

1  Information recites at least when it precedes a dollar

2  amount in Count 1 and Count 2, and -- but the Notice of Plea

3  Agreement limits the forfeiture to up to, but not to exceed,

4  not more than that amount.

5           And so the Information -- the Plea Agreement

6  limits the Information, and the Defendant wanted to make

7  that clear.

8           THE COURT:  Are you talking about the forfeiture

9  or what are you talking about?

10           MR. MCHUGH:  I'm talking about the forfeiture.

11           THE COURT:  Okay.  That has nothing to do with

12  whether he pleads guilty or not other than possibly

13  punishment.

14           MR. LOPEZ:  Your Honor, I think what he wants to

15  clear up on the record is that we're not going to seek any

16  additional forfeiture than beyond what's stated within the

17  Plea Agreement, and that's not the Government's intent.

18           THE COURT:  But the Notice of Forfeiture is there,

19  but this is not in Count 1 and Count 2.  It's just a notice

20  with regards to the punishment.

21           MR. LOPEZ:  That's correct, Your Honor.

22           THE COURT:  Part of the punishment --

23           MR. LOPEZ:  That's correct.

24           THE COURT:  -- because of course, the statute can

25  reach other parts of the punishment which I have explained

 1    to the Defendant; but the Notice of Forfeiture is also

 2    appropriate possibly as a part of the punishment.

 3            MR. LOPEZ:  That's correct, Your Honor.

 4            THE COURT:  And so is the money judgment, and so

 5    is the substitute assets.

 6            MR. LOPEZ:  Correct.

 7            THE COURT:  That's all in the Criminal

 8    Information, and I have explained that to him.  Is that --

 9            MR. MCHUGH:  (Speakers talk at the same time) --

10            THE COURT:  -- understood by the defense?

11            MR. MCHUGH:  I'm sorry, Your Honor?

12            THE COURT:  You understand that, right?  It's a

13    Criminal Information, right?

14            MR. MCHUGH:  I absolutely understand.

15            THE COURT:  Okay.  So you already -- you heard me

16    explain that to your client also, right?

17            MR. MCHUGH:  I have heard that, Your Honor, yes.

18            THE COURT:  Okay.  And so what else did you want

19    to bring up?

20            MR. MCHUGH:  Nothing else, Your Honor.

21            THE COURT:  Has anybody made any promise to you

22    other than this Plea Agreement that is making you plead

23    guilty, Mr. Romero?

24            DEFENDANT ROMERO:  No, Your Honor.

25            THE COURT:  Has anybody made prediction or try to

1  tell you or promise you that they know exactly what sentence

2  I will impose in your case?

3            DEFENDANT ROMERO:  No, Your Honor.

4            THE COURT:  And you do realize that, although

5  there is this Plea Agreement, the Court doesn't have to

6  follow the Plea Agreement.  The Court can decide not to

7  accept the Plea Agreement and dismiss the charges against

8  you; and if -- of this Criminal Information -- and if I

9  decide not to dismiss the charges against you at any point

10  that would explain to you that you do have this plea bargain

11  agreement, and that the only way that you can take your

12  guilty plea back is if I decide not to dismiss either charge

13  against you.  Do you understand that?  If not, the plea

14  bargain agreement is present and before the Court.  Do you

15  understand that?

16            DEFENDANT ROMERO:  I do, Your Honor.

17            THE COURT:  And so in other words, you do

18  understand that the plea bargain agreement is not binding on

19  the Court?

20            DEFENDANT ROMERO:  I understand, Your Honor.

21            THE COURT:  And that, if I do not follow the Plea

22  Agreement in any way, you will not be able to take your

23  guilty plea back.  The only exception to that were to be if

24  I would decide not to dismiss one of the charges or both of

25  the charges against you -- well, one of the charges for that

1   reason, and that reason alone, you could take your guilty

2   plea back; but even then, you could still continue to plead

3   guilty; but obviously, the plea bargain agreement might be

4   less because of my not dismissing the charges.  Do you

5   understand that?

6           DEFENDANT ROMERO:  I do, Your Honor.

7           THE COURT:  Again, I repeat that, if I decide not

8   to dismiss the charges against you, and if I reject the plea

9   bargain for that reason, again, you can continue to plead

10  guilty; but obviously, the plea bargain agreement might be

11  less than that was proposed in your Plea Agreement with the

12  Government.  Do you understand that?

13          DEFENDANT ROMERO:  I do, Your Honor.

14          THE COURT:  Knowing everything which I have

15  explained today, do you still want to plead guilty to the

16  Criminal Information?

17          DEFENDANT ROMERO:  Yes, Your Honor.

18          THE COURT:  To both counts?

19          DEFENDANT ROMERO:  Yes, Your Honor.

20          THE COURT:  The Court is going to find that the

21  plea of the Defendant is voluntary and not the result of any

22  force or threat or promise other than that recited in his

23  Plea Agreement.

24          I want you -- I want you to listen very closely,

25  now, because the I'm going to ask the Government's attorney

1  to state the facts in each one of your counts that you have

2  pled guilty to as to the Government claims they are.

3        The reason that I want you to listen closely is,

4  because when he's finished, I'm going to ask you if what he

5  said about you was true, or if there is any part of what he

6  said about you that was not true.

7        Go ahead and proceed, sir.

8        MR. LOPEZ:  Thank you, Your Honor.

9        On or about January 19, 2018, the Defendant did

10 knowingly and willfully use and cause to be used a facility

11 in interstate and foreign commerce, namely, a telephone and

12 wire, with the intent to promote, manage, establish, carry

13 on, and facilitate the promotion, management, establishment,

14 and carrying on of an unlawful activity, namely, bribery,

15 contrary to Texas Penal Code § 36.02, and thereafter,

16 performed and attempted to perform an act to promote,

17 manage, establish, and carry on and to facilitate the

18 promotion, management, establishment, and carrying on of the

19 above unlawful activity.

20        THE COURT:  Are you talking about Count Number 1?

21        MR. LOPEZ:  Yes, Your Honor.

22        THE COURT:  Okay.

23        MR. LOPEZ:  On or about said date, the Defendant

24 communicated with the Agua Special Utility District,

25 hereinafter Agua SUD, general manager, Individual A, and

1  Agua SUD Board Member A by cellular phone in interstate

2  commerce regarding and to promote a bribery scheme to sell a

3  second water tank to Agua SUD.

4        As part of the scheme, Agua SUD would authorize

5  the purchase of a second water tank.  In January of 2018,

6  the Agua SUD Board declared an emergency and voted to

7  purchase said water tank from the Defendant without seeking

8  or soliciting additional bids as would otherwise be required

9  under state law, absent said emergency.

10        After the vote, the Defendant received at least a

11  hundred and six thousand two hundred and fifty dollars in

12  January of 2018, and later, received an additional $31,875

13  in connection with storage fees for the tank that were never

14  incurred by the Defendant.  The storage fees were approved

15  by the Agua SUD general manager without Board approval.

16        After receiving said funds, the Defendant

17  continued to speak with Individual A and Agua SUD Board

18  Member A by cellular phone in interstate commerce regarding

19  the distribution of funds received from the sell of the

20  alleged water tank and with the intent to promote the

21  unlawful activity of bribery.

22        The Defendant communicated with Agua SUD Board

23  Member A who solicited the Defendant for a benefit as

24  consideration for Agua SUD Board Member A's votes in

25  connection with the Agua SUD purchase of the water tank and

1    Agua SUD Board Member A's exercise of discretion as an Agua

2    SUD board member.

3            Based on the solicitation and the board member's

4    prior vote for the water tank sell, the Defendant agreed to

5    confer and did provide the board member with approximately

6    $6,000.

7            Defendant further admits that, during the relevant

8    period, he communicated with Individual A by cellular phone

9    regarding compensation that he would provide to Individual A

10   that the Defendant believed would at least be partially

11   delivered to Agua SUD board members for their respective

12   votes or to influence them.

13           As part of the funds received by the Defendant in

14   connection with the sale of the second water tank, Defendant

15   paid at least 42,500 to Individual A which Defendant

16   believed would be partially used to deliver compensation or

17   influence to Agua SUD board members for their respective

18   votes.

19           Therefore, Defendant believed and agreed to

20   provide funds to Individual A as a benefit to be provided to

21   said board members in consideration for their votes and

22   exercise of discretion in purchasing said water tank from

23   Defendant or his business entity.

24           And Your Honor, I don't know if the Court would

25   like me to proceed to Count 2 or --

1            THE COURT:  No.  I do, but not yet.

2            MR. LOPEZ:  Okay.

3            THE COURT:  Mr. Romero, you heard what he said

4    about you.  Is what he said about you true?

5            DEFENDANT ROMERO:  Yes, Your Honor.

6            THE COURT:  Okay.  And your employment at the time

7    was what?

8            DEFENDANT ROMERO:  I was city manager for City of

9    Penitas.

10           THE COURT:  Okay.  And you also had a business on

11   the side where you sold water tanks?

12           DEFENDANT ROMERO:  I had a construction company

13   and a business that did, and I was approached with a water

14   tank that was for sale, yes, Your Honor.

15           THE COURT:  Okay.  So this -- you were going to be

16   selling that to the City?

17           DEFENDANT ROMERO:  No.  Not to my City, no, sir.

18           THE COURT:  To who?  To another --

19           DEFENDANT ROMERO:  To Special Utility District.

20           THE COURT:  So okay.  On or about January 19th of

21   the year 2018, you knowingly and willfully did use and cause

22   to be used a facility in interstate and foreign commerce,

23   namely, a telephone and a wire, with the intent to promote,

24   manage, establish, carry on, and/or facilitate the

25   promotion, management, establishment, and carrying on of an

1   unlawful activity, namely, bribery, contrary to Texas Penal

2   § 36.02, and thereafter, performed and attempted to perform

3   an act to promote, manage, establish, and carry on and to

4   facilitate the promotion, management, establishment, and

5   carrying on of the above unlawful activity.

6          The unlawful activity that has been described by

7   the Government is that you would be selling some of these,

8   or this place was going to be selling these, to the entity

9   that is buying them, and that you were going to get a

10  kickback for it; is that right?

11         DEFENDANT ROMERO:  (No audible response).

12         THE COURT:  No?  So what is it?

13         MR. LOPEZ:  Your Honor, he's going to be paying a

14  kickback.  He's not part of Agua SUD.

15         THE COURT:  So he's going to be paying that to

16  them?

17         MR. LOPEZ:  Yes, Your Honor.

18         THE COURT:  So what's in it for him?

19         MR. LOPEZ:  The -- what he's going to be gaining

20  on the sell of the water tank, Your Honor.

21         THE COURT:  Repeat the facts again.

22         MR. LOPEZ:  Verbatim, Your Honor?

23         THE COURT:  Well, yeah.  When -- it clearly, in

24  other words.

25         MR. LOPEZ:  Okay.

1           So basically, what has occurred, Your Honor, is --

2           THE COURT:  He's a city manager of Penitas.

3           MR. LOPEZ:  Which --

4           THE COURT:  But this has nothing to do with that

5  job?

6           MR. LOPEZ:  That's correct.

7           THE COURT:  Okay.  And so then --

8           MR. LOPEZ:  He has a water tank that he is

9  facilitating a sale to the Agua Special Utility District.

10  In order to get that --

11           THE COURT:  Okay.  But how does he have the water

12  tank?

13           MR. LOPEZ:  So he has the water tank through other

14  means, Your Honor.  At the time of the sale, he actually

15  didn't have said water tank, which goes into the storage

16  fees that's alluded to in the factual basis.  But --

17           THE COURT:  So he somehow approaches somebody

18  that's involved with this Agua and says, "I can get you a

19  water tank."

20           MR. LOPEZ:  That's correct, Your Honor.  And to be

21  clear, this is a second water tank sell because there was a

22  preceding one that the Defendant had already sold to Agua

23  SUD.

24           THE COURT:  And Agua SUD is a water district?

25           MR. LOPEZ:  That's correct.

1          THE COURT:  And a governmental agency?

2          MR. LOPEZ:  That's correct.

3          THE COURT:  Okay.  So he approaches Agua SUD, but

4    he's not employed with Agua SUD?

5          MR. LOPEZ:  That's correct.

6          THE COURT:  And says, "I can get you a water

7    tank," and why did they find it necessary to pay him money

8    to go find a water tank as opposed to them getting one?

9          MR. LOPEZ:  Because --

10          THE COURT:  What's the service that he's providing

11   for getting this?

12          MR. LOPEZ:  So Your Honor, part of that, Agua SUD

13   declares an emergency, so that they can purchase it without

14   going through the traditional --

15          THE COURT:  Bidding process that --

16          MR. LOPEZ:  -- bidding processes --

17          THE COURT:  -- is required by statute.

18          MR. LOPEZ:  That's correct, and in addition, Your

19   Honor, the Defendant was going -- the Defendant did pay

20   monies back to some -- to at least one of the members in

21   exchange for --

22          THE COURT:  As a bribery.

23          MR. LOPEZ:  That's correct, Your Honor.

24          THE COURT:  So the advantage here was, whoever was

25   on the Agua SUD Board wanted to -- they realized that they

1   needed to buy the water tank?

2          MR. LOPEZ:  Yes.

3          THE COURT:  At the same time, they don't want to

4   go through the process of putting out for bids, especially

5   since they have found out from this Defendant that he would

6   be willing to find it for them as long as he (glitch in

7   audio) paid for it.

8          MR. LOPEZ:  And Your Honor, just to backtrack a

9   little bit, I don't necessarily believe that Agua SUD

10  actually needed the water tank, or that there was truly an

11  emergency.  Nonetheless, it was declared, so that the

12  traditional bidding process would be circumvented.

13         THE COURT:  Right.  That's part of the violation

14  here.

15         MR. LOPEZ:  Yes.

16         THE COURT:  But not that they needed a water tank

17  because of an emergency, but normally, you need a water

18  tank, or they didn't need a water tank --

19         MR. LOPEZ:  I --

20         THE COURT:  -- at all?

21         MR. LOPEZ:  I think, it's arguable that they

22  didn't need a water tank at all at that particular -- at

23  that particular time, Your Honor.

24         THE COURT:  So what were -- they didn't have a

25  tank?

1          MR. LOPEZ:  There -- like I said, there was

2    already a tank that had previously been purchased by Agua

3    SUD from the Defendant, Your Honor; and as a special utility

4    district, they already have other tanks, Your Honor.

5          THE COURT:  So they already had one that they had

6    purchased from this Defendant with no payout?

7          MR. LOPEZ:  There was a payout, Your Honor.  That

8    is a --

9          THE COURT:  For the first -- for the -- for

10   another one besides the one he's pleading guilty to?

11         MR. LOPEZ:  That's correct, Your Honor.

12         THE COURT:  They had already paid him once?

13         MR. LOPEZ:  Yes.

14         THE COURT:  So they paid him again which is this

15   charge?

16         MR. LOPEZ:  That's correct.

17         THE COURT:  For another tank?

18         MR. LOPEZ:  That's correct.

19         THE COURT:  And the view is that, perhaps, they

20   really didn't need another water tank, so what's in it for

21   them is that he's going to give them some kind of payment

22   for the fact that he -- they paid him from the Agua SUD fund

23   to sell them another tank?

24         MR. LOPEZ:  That is part --

25         THE COURT:  More than the price of the tank?

1          MR. LOPEZ:  That is part of it, Your Honor, yes

2          THE COURT:  And so then, in return, they would get

3   part of the money that they paid him from him?

4          MR. LOPEZ:  They personally, not they, the Agua

5   SUD --

6          THE COURT:  They personally, right, not the

7   district or --

8          MR. LOPEZ:  Yes.

9          THE COURT:  -- or whatever it is?

10          MR. LOPEZ:  Yes.

11          THE COURT:  Okay.

12          All that was true; is that correct, Mr. Romero?

13   The way the Government has presented this -- the facts as

14   they have just been stated.

15          DEFENDANT ROMERO:  Can I have one moment, Your

16   Honor?

17          THE COURT:  Sure.

18       (Pause.)

19          THE COURT:  The one person that's really happy --

20   where is the interpreter?  She hasn't had to interpret this.

21       (Pause.)

22          DEFENDANT ROMERO:  Yes, Your Honor.  Yes, Your

23   Honor.

24          THE COURT:  So it is true as to how I have just

25   asked you; is that correct?

1          DEFENDANT ROMERO:  Yes, Your Honor.

2          THE COURT:  Was there any part that was not true,

3  as to this last question that I asked you?

4          DEFENDANT ROMERO:  No, Your Honor.

5          THE COURT:  Okay.  That's with regards to Count

6  Number 1, and what is it with Count Number 2?

7          MR. LOPEZ:  From on or about June 25, 2020,

8  through August 21, 2020, Defendant did knowingly and

9  willfully and fraudulently receive any material amount of

10 property from a debtor after the filing of a case under

11 Title 11 with the intent to defeat the provisions of Title

12 11 in violation of Title 18 United States Code § 152

13 subsection 5.

14          On or about October 8, 2019, Hidalgo County

15 Emergency Services Foundation filed for Chapter 11

16 bankruptcy in the Southern District of Texas, Corpus Christi

17 Division, in Case Number 2:19-bk-20497, herein referred to

18 as the "Bankruptcy Proceeding."  The filing of the

19 bankruptcy Petition stated the collection activity and

20 created a bankruptcy estate.

21          On or about November 4, 2019, the Defendant was

22 appointed to serve as the chief restructuring officer of the

23 Hidalgo County Emergency Services Foundation.  While serving

24 as the chief restructuring officer of Hidalgo County

25 Emergency Services Foundation during the period between June

1  25, 2020, and August 21, 2020, the Defendant obtained at
2  least $50,000 from the Hidalgo County Emergency Services
3  Foundation bankruptcy estate that was not authorized or
4  earned as compensation for his services as chief
5  restructuring officer of Hidalgo County Emergency Services
6  Foundation during the Bankruptcy Proceeding.
7          The Defendant knew he was not entitled to receive
8  the $50,000, as it was not part of any earned compensation
9  for services as chief restructuring officer and was not
10 authorized by the Court as compensation and received it with
11 the intent to defeat the Title 11 bankruptcy protections.
12         THE COURT:  So who is it in the Hidalgo County
13 Emergency Services Foundation that gives him the $50,000?
14         MR. LOPEZ:  Your Honor, as chief restructuring
15 officer, he's the one that's essentially managing all the
16 financial affairs --
17         THE COURT:  He was chief what officer?
18         MR. LOPEZ:  Chief restructuring officer, Your
19 Honor.
20         THE COURT:  As part of the bankruptcy?
21         MR. LOPEZ:  Yes.
22         THE COURT:  Okay.  So sometime between June 25,
23 2020, through August 21, 2020, you were this particular
24 officer as part of the Bankruptcy Proceedings; is that
25 correct, Mr. Romero?

1          DEFENDANT ROMERO:  Yes, Your Honor.

2          THE COURT:  And you knew what your

3  responsibilities were; is that correct?

4          DEFENDANT ROMERO:  Yes, Your Honor.

5          THE COURT:  But at the same time, you received

6  $50,000 from the debtor, Hidalgo County Emergency Services

7  Foundation when you knew that, that was to defeat the

8  provisions of Title 11 which would be a violation of Title

9  (glitch in audio) to receive that amount of money from the

10 debtor while they're in the middle of a Bankruptcy

11 Proceeding?  You understood that, right?

12         DEFENDANT ROMERO:  Yes, Your Honor.

13         THE COURT:  You knew what you were doing was

14 illegal, and no one forced you to do it.  You did it of your

15 own free will?  Did somebody force you to do this?

16         DEFENDANT ROMERO:  No, Your Honor.

17         THE COURT:  Did you do this of your own free will

18 and know it was illegal?

19         DEFENDANT ROMERO:  Yes, Your Honor.

20         THE COURT:  Why do you hesitate?

21         DEFENDANT ROMERO:  No reason, Your Honor.

22 Difficult day.

23         THE COURT:  What?

24         DEFENDANT ROMERO:  Difficult day.

25         THE COURT:  You should have felt that way at the

1    time that this stuff was going on as opposed to today.

2              DEFENDANT ROMERO:  Yes, sir.

3              THE COURT:  And then, you wouldn't be here today.

4    You would have stopped it and not done it.  But the Court is

5    definitely satisfied that there is a factual basis for each

6    of one of his pleas of guilty with regards to the Criminal

7    Information in Count 1 and Count 2.

8              And the Court is going to find that there is a

9    factual basis for his guilty pleas with regards to each one

10   these Criminal Information charges since he knows of his

11   right to a trial and what the maximum possible punishment

12   is; and since he's voluntarily pleading guilty, I will

13   accept his guilty plea as to these two Criminal Information

14   charges, and I will order that a presentence investigation

15   report be prepared with regards to each one of these two

16   counts all in one presentence investigation report.

17             The Court is going to ask the probation office to

18   make sure that this report is prepared by December the 15th,

19   obviously, by the probation office.  Any objections after

20   it's prepared by either the defense or the Government have

21   to be filed by December 29th.

22             MR. MCHUGH:  No objection.

23             THE COURT:  Final report has to be prepared and

24   given to the Court by January the 5th of 2022.  Is he going

25   to insist on a 35-day waiting period before he is sentenced?

1          MR. MCHUGH:  I'm sorry, Your Honor?

2          THE COURT:  Is he going to insist on the 35-day

3   waiting period before he would be sentenced, or it's okay if

4   I set it before then?

5          MR. MCHUGH:  It would be okay to set before that,

6   Judge.

7          THE COURT:  Okay.  The Court's going to set it for

8   January the 20th at 9:30 in the morning in this courtroom,

9   obviously, 2022.  If you-all don't have anything else, you-

10  all can be excused.  Thank you-all very much.

11         He is out on bond.  I need to make a decision as

12  to whether he should continue out on bond.  I will take

13  judicial notice of his pretrial services report.  I will ask

14  the pretrial -- well, the probation officer -- has there

15  been any violation of his bond requirements?

16         MS. MONTEMAYOR:  Your Honor --

17         MR. LOPEZ:  Your Honor --

18         MS. MONTEMAYOR:  -- he's not -- the magistrate

19  judge has not set the bond.

20         THE COURT:  What?

21         MS. MONTEMAYOR:  The magistrate judge has not set

22  bond yet.

23         THE COURT:  He hasn't set bond yet?

24         MS. MONTEMAYOR:  No, Your Honor.

25         MR. LOPEZ:  Your Honor --

1    MS. MONTEMAYOR:  It is being (indiscernible) with
2 him as we speak, Your Honor.
3    THE COURT:  So we need to send it down to the
4 magistrate to determine --
5    MR. LOPEZ:  They're expecting it, Judge, yes.
6    MS. MONTEMAYOR:  That's correct.
7    THE COURT:  They're already expecting him?
8    MS. MONTEMAYOR:  Yes, Your Honor.
9    THE COURT:  And the reason is because there wasn't
10 an arrest yet?
11    MS. MONTEMAYOR:  Correct, Your Honor.
12    THE COURT:  Okay.  If you-all don't have anything
13 else, you-all can be excused.  Obviously, this is going to
14 be the decision of the magistrate as to whether he continues
15 on bond or not, and either side can appeal to the Court if
16 either side is -- anyone -- either side is wanting the
17 reconsideration by the Court itself about the bond
18 conditions.
19    MR. LOPEZ:  Thank you, Your Honor.
20    THE COURT:  If you-all don't have anything else,
21 you-all can be excused.  Thank you-all.
22    (Proceedings adjourned at 4:26 p.m.)
23
24
25                    * * * * *

1          *I certify that the foregoing is a correct*

2  *transcript to the best of my ability due to the condition of*

3  *the electronic sound recording of the ZOOM/video/telephonic*

4  *proceedings in the above-entitled matter.*

5  */S/ MARY D. HENRY*

6  *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

7  *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

8  *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

9  *JTT TRANSCRIPT 66284*

10 *DATE FILED:  OCTOBER 3, 2022*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25